CASE 94—ACTION BY JOS. C. DUPOYSTER IN HIS OWN RIGHT AND AS ADMINISTRATOR OF BEN S. DUPOYSTER AGAINST THE FT. JEFFERSON IMPROVEMENT CO. AND OTHERS TO ENFORCE A PURCHASE MONEY LIEN ON LAND.—FEB. 25.

# Ft. Jefferson Improvement Co. v. Dupoyster.

### APPEAL FROM BALLARD CIRCUIT COURT.

JUDGMENT RESCINDING CONTRACT OF SALE AND ADJUSTING EQUITIES, AND THE FT. JEFFERSON IMPROVEMENT CO. AND OTHERS APPEAL. REVERSED ON APPEAL OF MRS. REBECCA DUPOYSTER AND AFFIRMED ON APPEAL OF OTHER APPELLANTS.

SUBROGATION—TENANTS IN COMMON—SALE OF PART OF LAND BY ONE CO-TENANT—RATIFICATION—PLEADING—RELIEF SOUGHT BY REPLY.

Held: 1. Where a father who owned land jointly with his children executed a mortgage thereon for his own debt, and thereafter the children, at the father's request, and to relieve their own interest, assumed the debt, executing their note therefor, they were entitled to be subrogated to the rights of the mortgagee; not being mere volunteers.

2. In an action to recover the unpaid purchase money of land, in which defendant corporation sought and was granted a rescission, defendant is not entitled to a lien for purchase money paid upon such parts of the land as have been sold under judgments

in the action to satisfy pre-existing liens; it being bound by those judgments, having received upon its claim the surplus of the proceeds of the sales made thereunder, and it being inequitable, aside from that fact, to permit it to assert such a lien.

3. Where one of several tenants in common sold specific parcels of the land to different persons, and afterwards sold the entire land to another, his co-tenants will not be allowed to ratify the sales of the specific parcels, and thus allot them to the vendor in full of his interest, so as to deprive the purchaser of the whole tract of his lien upon the vendor's interest for purchase money paid, as the loss should be borne by all the purchasers.

4. While the court was not authorized to place land in the hands of a receiver where the interest of only one of several co-tenants was incumbered, yet as the other co-tenants were adjudged their part of the rents which came into the hands of the receiver, and, by consent order, agreed to pay their part of the expenses of the receiver, they will not be heard to complain of the original error.

5. In an action to enforce a lien on land, it was error to extend the lien over the interest of one who was not made a defendant to the original petition, though plaintiff, by a reply to such person's answer to a cross petition to which she was made a defendant, asserted a lien on her interest in the land, as no rejoinder was filed, and no issue made upon that question.

J. M. NICHOLS & SON, AND F. H. SULLIVAN, FOR APPELLANTS.

This is the second appeal of this case. The opinion of the court when the case was here before, is reported in 108 Ky., 792 (21 R., 515) (51 S. W., 810) on the return of the case J. M, Benton filed proof of his appointment as receiver of the Ft. Jefferson Improvement Co., and was admitted as a party to the cause to represent its interests.

On lodging. the transcript of the present appeal, counsel for the appellant company, and the receiver requested the clerk of this court to place the transcript of the former appeal with this one. It has been stipulated by counsel that any portion of the first transcript may be made use of to elucidate any proposition presented on this appeal.

We contend on this appeal:

1. Appellees should recover nothing except one-half of the land which Thomas Dupoyster owned, and the company's lien should cover the interest of J. C. Dupoyster and wife therein.

2. The company's rights should be held to be superior to the deed of 1883.

3. The company's lien should cover the Norton lands and the Terrell lands and all the other lands bought by J. C. Dupoyster.

4. There should be no subrogation to the Harkless mortgage.

5. The Jackson heirs should have all the lots conveyed to them.

## POINTS AND AUTHORITIES.

1. Appellees should not recover any lands not owned by Thomas Dupoyster. Smith v. Brannin, 79 Ky., 119; Kirk v. Nichols, 2 J. J. Mar., 469; Venable v. Thompson, 3 Dana, 324; Upsham v. McBride, 10 B. Mon., 205; Morgan v. Brown, 4 Mon., 297; Freeman on Co-tenancy, sec. 154; Coleman v. Coleman, 3 Dana, 403; Sneed v. Atherton, 6 Id., 279-280; Bullock v. Bemis, 3 Mar., 287; Gundy v. Jackson, 1 Litt., 11; Fowler v. Craven, 3 J. J. Mar., 429; Lunsford v. Turner, 5 Id., 105; Nolan v. Feltman, 12 Bush, 121; Foster v. Morris, 3 A. K. Mar., side p. 609; Wood's Landlord and Tenant (Ed. 1888), vol, 1, p. 498; Martin Heirs v. Reynolds, 9 Dana, 328.

2. Appellant's lien should be held to cover the Norton and Terrell tracts. Jones on Mortgages, vol 1 (5th Ed.) sec 736, p. 683; Wadsworth v. Lyon, 93 N. Y., 201; Graham v. King, 96 Ky., 346; Burke v. Burke, 7 Ky. Law Rep., 434; Greer v. Wintersmith, 85 Ky., 516; McCullon v. Boughton, 132 Mo., 601.

3. Appellees were not entitled to subrogation to the Harkless mortgage.

1. They had not paid all the debt. Lusk v. Hopper, 3 Bush, 185; Hover v. Epler, 52 Pa. St. 522; In re Alleghaney Bank, 7 Atl. (Pa.) 788; 24 Amer. & Eng. Ency. Law (1st ed.), p. 200.

2. They were volunteers. Dawson v. Lee, 83 Ky., 50; Ferguson v. Quinn, 97 Tenn., 46; 36 S. W., 576; 33 L. R. A., 688; Ins. Co. v. Middleport, 124 U. S., 534; McNutt v. Miller, 29 W. Va., 480; 24 Amer. & Eng. Ency. Law (1st ed.), 281.

(a). Parol evidence to vary the contract between appellees and Harkless was not admissible. Benefit Assn. v. Hickman, 86 Ky., 254; More v. Parker, 15 Ky. Law Rep., 125, Bowers v. Linn, 14 Id., 889; Ry. Co. v. Godin, 12 Id., 508.

3. A surety is not entitled to subrogation as against a prior surety. Bank v. Rudy, 2 Bush, 326; Patterson v. Pope, 5 Dana, 241; Brandenburg v. Flynn's Admr., 12 B. Mon., 397; Bank v. Sherley, 12 Bush, 304; Ins. Co. v. Beaman, 48 Pac., 1007.

4. The lien of the original Harkless mortgage was released by the extension granted on the execution of the mortgage by appellees. Chandler's Admr. v. Scully, 7 Ky. Law Rep., 374;

Ft. Jefferson Improvement Co. v. Dupoyster.

McGoodwin v. Williams, 14 Id., 204; 15 Amer. & Eng. Ency. Law (1st ed.), 838.

4. The ruling of the trial court as to lands sold and waste committed by J. C. Dupoyster was correct. Stone v. Lasley, 2 Duv., 267; Burch v. Burch, 62 Ky., 622; Dennison v. Foster, 9 Ohio, 126.

5. The ruling of the trial court that the interest of Rebecca Dupoyster was subject to the lien of the company was correct. Kennedy v. Ten Broeck, 11 Bush, 241; Halley v. Winchester Lodge, 30 S. W., 999.

6. The deed of 1883 was not notice to the company because not indexed, not delivered, and voluntary. Enders v. Williams, 1 Met., 348; Elliott v. Harris, 81 Ky., 470; Miller v. Bradford, 12 Iowa, 14; Barney v. McCarty, 15 Id., 510; Gwynne v. Turner, 18 Id., 1; Howe v. Thayer, 49 Id., 134; Peters v. Ham, 62 Id., 656; Frost v. Wood, 20 Ohio, 261; Lowbaid v. Culbertson, 59 Wis., 433; Speer v. Evans, 47 Pa. St., 141.

JOHN W. RAY, ATTORNEY FOR DUPOYSTER.

### SUBJECTS DISCUSSED AND AUTHORITIES.

Deed of joint tenant for specific portion of joint lands by metes and bounds is not void, but may be ratified by the other joint tenants. Freeman Co-tenancy, secs. 199 to 220; Alve's Exr. v. Town Henderson, 16 B. M., 165; Barnhart v. Campbell, 50 Mo., 598; Holcomb v. Coryell, 11 N. J. Eq., 548; Boggess v. Meredith, 16 W. Va., 1; Robinett v. Preston, 2 Robinson (Va.) 276; Grook v. Vandevort, 13 Neb., 505; Hagan v. Bickerton, 17 R. I., 483; Soutter v. Porter, 22 Me., 405; March v. Huyter, 50 Tex., 243; 60 Tex., 447; Emeric v. Alvarado, 90 Cal., 444; Goodwin v. Keny, 49 Conn., 563; Kimball v. Street, 173 Mass., 152; Frost v. Curtis, 172 Mass., 401; Dennison v. Foster, 9 Ohio, 126 and numerous cases therein cited.

Mrs. Rebecca Dupoyster's interest is not subject to any lien, for the reason that the deed as to her was never delivered or became effective, it being placed in escrow, and the condition was never performed nor waived. Mudd v. Green, 11 Rep., 359; Devlin on Deeds, secs. 322-304.

Upon rescission where interest is allowed the purchaser rents for the land should be charged him. In no event should the owner of lands be charged with rents and interest, as here.

All questions as to Jacksons are *res judicata* by the first judgment from which they did not appeal. Former Opinion, 108 Ky., 792; (51 S. W. Rep., 810; 21 R., 515.)

As to the question of subrogation we claim that the Im-

provement Co. has not lost anything by the judgment to J. B. Dupoyster the full benefit of the purchase of the Terrell land but in fact has been benefiited by the $400 that was paid on its debt.

There is no theory of the law that would give the company a lien on any property of B. A. Dupoyster except the land bought of him upon rescission.

J. B. Dupoyster was an infant when the deed from B. S. Dupoyster to him was made, and could not contract, and so did not agree to pay the Terrell debt and has done nothing since his majority to bind himself to pay it except his purchase of the property at decretal sale. The company has paid nothing on the faith of said deed and is in no position to claim an equity. There can be no subrogation without a payment or a liability. We repeat that the Terrell land was sold under a decree in *this case*, and bought at public sale by J. B. Dupoyster who has paid the purchase price out of which these appellants have been paid over $400.

As to appellee's right to subrogation to the Harkless mortgage:

In this case there was a judgment rendered that the Harkless debt was superior to the claim of every person and this judgment was rendered at the solicitation of counsel who then and now represents the Improvement Company. By the opinion of the former appeal this judgment lien covers the joint tenancy of J. B. Dupoyster and Mrs. Edwards with their father. J. B. D. pays off part of this lien in money and gives with security for the balance and absolutely discharges that debt and release the joint property from the judgment and mortgage lien. There is no better settled principle of subrogation than that he is entitled to the lien of the judgment and prior mortgage even if there was no agreement that he should have such a lien. Selden on Subrogation, sec. 173; Harris, 796; and cases cited.

GEO. W. REEVES, FOR APPELLEES.

We respectfully submit to this honorable court the following

POINTS AND AUTHORITIES.

1. The ruling of the court below sustaining the demurrer to the amended and supplemental answer and cross petition of J. B. Dupoyster and Dalva D. Edwards filed April 20, 1900, was error. 30 S. W. Rep., 702 Texas; Alves v. Henderson, 16 B. Monroe, 165; Kistner v. Sidlinger, 33 Ind., 117; Ross v. Henderson, 77 N. C., 170; 15 Amer. Dec., 395; 65 Amer. Dec., 283;

Ft. Jefferson Improvement Co. v. Dupoyster.

55 Amer. Dec., 234; 24 Amer. Dec., 121; 60 Amer. Dec., 264; Jackson v. More, 6 ·Cow., 723; Young v. Edwards, 33 S. C., 404; Pachard v. Moss, 7 W. C. Rep., 310; Hartford & S. O. Co., v. Miller, 41 Conn., ·112; Sutter v. Porter, 27 Me., 417;· Doll v. Brown, 5 Cush., 291; Barnes v. Lynch, 21 Amer. St. Rep., 470; Johnson v. Johnson, 2 Hill Ch. 277; Graham v. Pierce, 19 Gratt. Ch. 28; Nelson v. Clay, 7 J. J. M. Ky., 138; Sec. 197, Freeman. co-tenancy and partition; Sec. 199 Freeman co-tenancy and partition; sec 206, Freeman co-tenancy and partition; Thomas et al., v. Turner, et al., 18 Ky. Law Rep., 209.

2. The court erred in subjecting the interest of Mrs. R. S. Dupoyster to sale to satisfy appellant's lien against J. C. Dupoyster. Fink, etc. v. Nolen, etc., 54 ·S. W., 948; Curd v. Dodds, 6 Bush, 681; Owens v. Snodgrass, 6 Dana, 229; 2 Hilliard on Torts, 590; Falmouth Bridge Co. v. Tibbatts, 16 B. M., 637.

3. The allotment of three blocks of these lands to the heirs of Fannie C. Jackson was also error. See authorities under point one.

4. The court erred in appointing a receiver and directing the collecting and adjudging rents in favor of appellants:   60 ·S. W., Rep., 185; 21 S. W., Rep., 1054; 15 Ky. Law Rep., 12; 20 Ky. Law Rep., 593; 5 S. W., Rep., 448.

5. Appellees were entitled to be subrogated to the lien of Harkless because of the settlement of Harkless mortgage: Acer v. Hotchkiss, 97 N. Y., 402; Ostermier v. Ostermier, 29 S. ·W., 221; 18 Ky. Law Rep., 1024; Crippen v. Chappell, 25 Kan., 495; 57 Amer. Rep., 687; Gans v. Theme, 93 N. Y., 225; Emmett v. Thompson, 52 N. W, Rep.. 31 Min.; Milton v. Mayberry, et al., 75 Wis., 191; Levi v. Martin, 48 Wis., 198; Valiskins v. Flemmings Tr., 29 Mo., 152; 77 Amer. Rep., 557; Blodgett v. Hitt, 29 Wis., 184; Perry v. Adams, 2 Amer. St. Rep., 326; Hall v. Hall, 35 W. Va., 155; 39 Amer. St. Rep., 800; Amer. v. Boyer, 89 Ala., 273; 7 S. W., Rep., 663; Pom. Eq. Jur., sec. 729.

,OPINION OF THE COURT BY JUDGE PAYNTER.

This is the second appeal of the ·case to this court.   The opinion delivered on the former appeal is found in 108 Ky., 792 (21 R., 515), (51 ·S. W., 810, 48 L. R. A., 537).   The court decided:   (1) That by the deed of Thomas Dupoyster, made in 1859, his son Ben S. Dupoyster took a life estate in the land conveyed, and that the children of J. C. Dupoyster, as

they were born, took vested remainders. (2) That Ben
Dupoyster, claiming under the deed of 1859, purchased ad-
verse claims and was holding under this deed at the time
it was sold to the appellants. (3) That in the Thomas Du-
poyster deed his son Ben. S. had the "discretion of allotting,
of dividing, or of partitioning," as he saw proper, the lands
among the children of Joe C., but not so as to create inequal-
ity or lessen the interest of any one of the children. (4) That
Joe C. had born to him four children, two of whom are dead;
that the interest of the dead children passed by the law of
descent to their lawful heir or heirs. (5) That there should
be a rescission of the sale by Joe C. and Ben S. to the appel-
lant, and on whatever of the land Joe C. is the owner by in-
heritance from his dead children a lien should exist in favor
of the appellant for the purchase money wrongfully received
by him. Numerous questions are raised, but we will not
here summarize them. From our consideration of the case
the question raised will be seen.

Before Joe C. and Ben S. made the deed to the appellant,
they had executed what is known as the "Harkless Mortgage"
on the land in controversy, but which mortgage did not
recognize any one as being the owners of the land except
the grantors. J. B. and his sister, Mrs. Edwards, are the
surviving children of Joe C., and own one-half the land em-
braced in the Thomas Dupoyster deed, because of the vested
remainders which they took. In this suit they asserted their
right under the Thomas Dupoyster deed to the entire boun-
dary, but it was decided that they took it together with the
other children of Joe C., and two having died, their father
inherited part of their (deceased children's) interest in the
land. It may be added here that Joe C. inherited three-
eighths of the tract of land, and his wife, Rebecca, one-
eighth. The grantors in the Harkless mortgage could not

create any lien on any interest in the land, except their own. The rights of J. B. Dupoyster and Mrs. Edwards were not affected by that mortgage. Pending this suit, and before the judgment was rendered from which the former appeal was prosecuted, J. C. Dupoyster and those representing the Harkless mortgage and J. B. Dupoyster and his sister entered into an agreement by which, if persons last named were adjudged the land, then the judgment for the Harkless debt should go against the entire tract. It is averred in the pleadings, and not denied, that the appellant Ft. Jefferson Improvement Company took its judgment subject to that agreement, and approved it. Pursuant to that agreement, a judgment was entered giving a lien on the entire tract of land for the Harkless debt. This was in the former judgment, from which no appeal was prosecuted, and that part of it has never been reversed, nor does any complaint seem to have been made on the former appeal as to that part of it. Subsequently J. B. Dupoyster and his sister, pursuant to the agreement which had been made and the judgment of the court, executed their obligations for the Harkless debt, and also gave a mortgage to secure its payment, and have paid $5,000 on it. It is insisted that J. B. Dupoyster and Mrs. Edwards are not entitled to be subrogated, because (1) they had not paid all the debt; (2) they were volunteers; (3) a surety is not entitled to subrogation as against a prior surety; (4) the lien of the original Harkless mortgage was released by extension granted on the mortgage debt by appellees.

First it may be said that the Harkless mortgage created a superior lien upon Joe C. Dupoyster's interest in the land to that of the appellant for the purchase money which it had paid, and which it was entitled to have refunded to it. J. B. Dupoyster and sister have paid all the debt, inasmuch

as they executed their note in lieu of the one which existed. So far as the right to subrogation goes, it is equivalent to the payment of the money, because they made it their own debt. There was a novation. The rule which the appellant claims should exist in equity can not have any application to the facts of this case. It is a universal rule of interpretation that one who voluntarily pays the debt of another, when he is under no obligation to pay, does not create a liability in his favor; nor can he be subrogated to the lien held by the creditor to secure its payment. It is equally as well settled, if one is bound for the debt of another, he has the right to discharge it, and when he does so an implied liability arises in his favor against the debtor, and he will be subrogated to the rights of the creditor. By the consent and agreement of the parties, J. B. Dupoyster and his sister's interest in the land became bound for the Harkless debt, the same as the property of their father and mother, if the latter joined in the mortgage. It did not then become their debt, but it continued to be the debt of their father, and in order to relieve their interest in the land they were compelled to pay it. They were not volunteers in the matter. They consented that their land might bcome impressed with the liability, at the request of their father, and with the approval of the appellant. However, it was not necessary to have the latter's approval. It did not increase the burden on the interest of J. C. Dupoyster, nor did it lessen the chances of the appellant to make its debt out of his interest in the land. The effect of the transaction is that J. B. Dupoyster and his sister have paid off a lien debt for which the interest of J. C. Dupoyster was primarily liable, to protect their interest in the land, and did so at his request. This court, in Ostermeyer v. Ostermeyer, 18 R., 1024, 39 S. W., 22, recognized the right of one thus paying the debt to

release his own interest in property to be subrogated to the rights of the creditors, and also held than an implied liability would arise. The mere fact that those holding the Harkless debt were willing to accept the obligation of J. B. Dupoyster, etc., for the mortgage debt, and give him time for the payment of it, did not have the effect of preventing subrogation. The right of subrogation arises out and from the transaction. It accrued the instant those representing the Harkless mortgage accepted the new obligation.

The doctrine of subrogation is one of equity, to promote justice, and it may or may not arise from a contract. The right to it depends upon the facts and circumstances of each particular case, and to which must be applied the principles of justice. Where a person furnishes money to pay the debt of another, if it is equitable that he should be substituted for the creditor it will be done. One is not a volunteer in a transaction where he has paid the money at the request of the person whose liability he discharges. Neither can one be regarded as a volunteer who pays money to relieve his own property therefor, for which some one else is liable. Pom. Eq. Jur., section 799, says: "The rule is well settled that when a life tenant, or any other person having a partial interest only in the inheritance or in the land, pays off a charge, mortgage, or incumbrance on the entire premises, he is presumed to do so for his own benefit. The lien is not discharged unless he intentionally release it. He can always keep the incumbrance alive for his own protection and reimbursement. His intention to do so will be presumed, even though he has taken no assignment. In fact, his payment constitutes him an equitable assignee." Same author (section 1211) says: "This equitable result follows, although no actual assignment, written or verbal,

accompanied the payment, and the securities themselves
were not delivered over to the person making payment, and
even though a receipt was given, speaking of the mort-
gage debt as being fully paid, and sometimes even though
the mortgage itself was actually discharged and satisfied
of record. This equitable doctrine, which is a particular
application of the broad principle of subrogation, is enforced
whenever the person making the payment stands in such
relations to the premises or to the other parties that his in-
terests, recognized either by law or equity, can only be fully
protected and maintained by regarding the transaction as
an assignment to him, and the lien of the mortgage as being
kept alive, either wholly or in part, for his security and bene-
fit."

Counsel for appellant avers that a surety is not entitled
to subrogation as against a prior surety. We are unable to
understand what application that doctrine has to the facts of
this case.

Under the contracts which Ben S. Dupoyster made, there
was a lien upon what is known in this record as the Norton
and Terrell tracts. Ben S. Dupoyster made to J. B. Dupoy-
ster a deed embracing these tracts, in which it was provided
that the grantee pay the lien debts on the land. This deed
was made when the grantee was an infant. The court in this
case directed these tracts to be sold to pay the debts
against them. J. B. Dupoyster became the purchaser. The
Norton tract brought about $400 more than was necessary
to pay the debt against it, and that excess was applied as a
credit to appellee's judgment against J. C. Dupoyster, and
against him as the personal representative of the estate of
Ben S. Dupoyster. If the Terrell land was embraced in the
Thomas Dupoyster deed of 1859, J. B. Dupoyster and his sis-
ter owned one-half of this land. Therefore J. B. Dupoyster

was put in the position of buying a part of his own land to discharge a debt which his uncle made, and for which he could not bind the vested remaindermen.   Perhaps the Norton land is outside of the boundary embraced in the Thomas Dupoyster deed.   The appellant got the entire benefit of this sale, except the part which went to pay a pre-existing claim against it.  Both tracts were sold under judgments in this action, and the appellant is bound by them.   The sales were confirmed by a sale of part of the Terrell tract, and appellant's lien was made valid on the balance of the tract, and to that extent was benefited by the sale, besides being relieved of a prior incumbrance.   Notwithstanding this, the appellant claims it had a lien on the Terrell and Norton tracts superior to the rights which J. B. Dupoyster acquired under his purchase.   Its right to assert this claim is barred by the judgments and proceedings in this case.   If it were not, it would be inequitable to permit the appellant to assert its lien against these tracts.

It appears that after Thomas Dupoyster made the deed to Ben S. Dupoyster, etc., in 1859, and before the deed was made to the appellant, Ben S. Dupoyster and J. C. Dupoyster sold to several persons tracts out of the Thomas Dupoyster boundary, and in the deeds of the purchasers their respective parcels were defined by metes and bounds. On the return of this case, J. C. Dupoyster, J. B. Dupoyster. and Mrs. Edwards pleaded these facts; and the last two named expressed their willingness to ratify the sales which had been made to the several persons, and thereupon asked that J. C. Dupoyster be charged in the division of the remaining part of the tract with the parcels which he and Ben S. Dupoyster had sold to persons prior to their sale to the appellant.   The practical effect of this would have been to have given to J. B. Dupoyster and Mrs. Edwards, out

of the boundary sold the appellant, an amount equal in value to their one-half interest in the tract of land which their father and uncle had sold prior to the sale to appellant. To do this would compel the appellant to suffer the loss which should be borne by all the purchasers. Where one joint tenant conveys a specific portion of the joint lands, it is not void. The other joint tenant could have joined in the conveyance, and thus have vested the purchasers with title. Their power to have ratified the sales of the specific parcels is unquestioned. That is not the question. The question here is, when sales have been made by one joint tenant to specific boundaries, can the other joint tenant say what sales he will ratify, and do so to the prejudice of another purchaser of a specific boundary? The court below held that this could not be done. If Joe C. Dupoyster was alone to be affected by such ratification, then a different question would be presented, because it would be eminently just, if the other joint tenants would ratify the sales of specific parts of the joint property, to charge him in the division therewith. But here J. C. Dupoyster has sold it all. As a result of the sale to appellant, the part which he sold it is in lien for the money which he wrongfully obtained on the contract of sale. The appellant occupies the same position it would occupy had the sale been upheld. If the co-tenants, before the sale to appellant, had ratified a previous sale by a deed duly recorded, or otherwise, and the appellant had had actual notice of the latter mode of ratification, then a different question would be presented for our consideration. To sustain the claim of the co-tenants (J. B. Dupoyster and Mrs. Edwards) would be to allow the exercise of their will after all the sales, determine what part of the land should be assigned to J. C. Dupoyster and who should suffer from such an assignment. They have no legal or

equitable rights which enable them to determine how the rights of the others to this suit shall be adjudged.

It is urged that the court erred in putting the land in the hands of the receiver. This is done upon the idea that the interests owned by J. B. Dupoyster and Mrs. Edwards were not incumbered by the plaintiff's debt, and the fact that J. C. Dupoyster's interest was would not authorize the court to place the whole tract in the hands of a receiver. It seems to us that J. B. Dupoyster and his sister could have complained of the action of the court in placing the land in the hands of a receiver, but they seem to have been adjudged their parts of the rents which came into the hands of the receiver, and by consent order agreed to pay their part of the expenses of the receiver. Under such circumstances they should not be heard to complain of the original error. The court did not dispose of the other half of the rents. Therefore we do not decide whether or not they should be applied to the appellant's debt.

As there seems to have been a provision in the deed of Dupoyster to Ft. Jefferson Improvement Company that the Ft. Jefferson Company was to convey to the assignor of Mrs. Fannie Jackson three blocks in the town of Ft. Jefferson, we are of the opinion that the court properly decided that (she having died) her children were entitled to have conveyed to them one-half of the same, to be charged to J. C. Dupoyster in the division of the land.

Mrs. R. S. Dupoyster is the wife of J. C. Dupoyster. She joined in the deed to the Ft. Jefferson Company, and she was the owner by inheritance from her children begotten by J. C. Dupoyster of one-eighth of the land embraced in the deed of Thomas Dupoyster. The Court adjudged that her one-eighth was subject to the payment of the amount due the appellant on the rescission of the contract. She was

not made a party to this action before the first appeal in this case. She was made a defendant in the cross petition of J. B. Dupoyster and Mrs. Edwards, wherein they asked for the partition of the land. She filed an answer to that in which she expressed her willingness to the partition of the land, claiming one-eighth. The Ft. Jefferson Improvement Company never made her a defendant in the action, nor by any pleading to which she was made a defendant did it seek any relief against her. As we have said, she filed an answer to the cross petition of J. B. Dupoyster and Mrs. Edwards, and to this answer the appellant filed a reply in which it said it was entitled to have its lien on her interest for the payment of the judgment rendered in its favor against J. C. Dupoyster and the estate of Ben. S. Dupoyster. No rejoinder was filed, and no issue was therefore made upon the question of the appellant's right to have its lien extended over her interest in the land. As there was no pleading filed by appellant seeking relief against her, in which she was made a defendant, it failed to manifest any right to have her interest in the land sold to pay the judgment against her husband.

The case is affirmed on the appeal of the Ft. Jefferson Improvement Company, and on the appeal of J. C. Dupoyster and J. B. Dupoyster and Mrs. Edwards, and is affirmed on cross appeal of Jackson, but is reversed on the appeal of Mrs. Rebecca S. Dupoyster for proceedings consistent with this opinion.